IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| RICHARD AND SHIRLEY STERLING,<br><br>Plaintiffs,<br><br>v.<br><br>AEROSTAR AIRPORT HOLDINGS, LLC, et al.,<br><br>Defendants. | CIVIL NO. 14-1180 (CVR) |

**OPINION AND ORDER**

**INTRODUCTION**

On March 17, 2013, Plaintiff Richard Sterling ("Sterling") and his family arrived in Puerto Rico to board a cruise ship for a family vacation. As they approached the baggage claim area of the Luis Muñoz Marín International Airport's ("LMM Airport") Terminal D, Sterling slipped and fell on a wet area, landing into his left shoulder and injuring himself as a consequence of the fall. That incident gave rise to this case, where Plaintiff and his wife Shirley Sterling sue for damages, pain and suffering and medical expenses.

Defendants are Aerostar Airport Holdings, LLC ("Aerostar"), as operator of the airport and its insurer, American International Insurance Company of Puerto Rico, Inc., d/b/a AIG Insurance ("AIG"); the Puerto Rico Ports Authority ("the Ports Authority"), as owner of the LMM Airport's facilities; Perfect Cleaning Services, Inc. ("Perfect Cleaning"), the entity in charge of maintenance and cleaning services for the LMM Airport's facilities and its insurer, Triple S Propiedad, Inc., d/b/a Triple S ("Triple S"); and Southwest Airlines Co., d/b/a Airtran Airlines.[1]

---

[1] Plaintiffs recently requested voluntary dismissal without prejudice of all claims filed against Southwest Airlines Co. The request was granted by the Court. (Docket Nos. 56 and 60).

<u>Richard and Shirley Sterling v. Aerostar Airport Holdings, LLC, et al</u>
Civil No. 14-1180 (CVR)
Opinion and Order
Page 2

Before the Court now are two (2) motions for partial summary judgment by co-Defendants Aerostar and the Ports Authority against Triple S. (Docket Nos. 47 and 48). Both parties aver that Triple S's policy covering Perfect Cleaning has a hold harmless and duty to defend clause that covers both of them in this cause of action and therefore, Perfect Cleaning and Triple S have a contractual duty to provide defense, indemnity and coverage to each of them under that policy.[2] Indeed, the clause in question is very broad and very clear, and covers "any and all claims, demands and/or suits whether judicial or extra judicial for any cause whatsoever." <u>See</u> Docket No. 47-2.

The Ports Authority alleges that, under the case of <u>Guzmán Quintero v. Ports Authority, et al.</u>,[3] the Puerto Rico Court of First Instance examined the exact hold harmless clause in question here in a case against the same Defendants, Perfect Cleaning, Triple S and itself, and held that Triple S had a duty to defend the Ports Authority under the hold harmless clause in the professional services contract between them.

Going further, Aerostar alleges that the case of <u>Burgos López v. LXR/Condado Plaza Hotel and Casino</u>, 2015 TSPR 56 is applicable here, where the Puerto Rico Supreme Court held that a party's duty to defend under a hold harmless agreement arises at the moment when the complaint is filed where allegations are raised that the damages suffered were caused totally on in part by the insured.

---

[2] These arguments had already been raised in Aerostar and the Ports Authority's Cross Claims filed against Perfect Cleaning and Triple S. (Docket Nos. 39 and 46). Triple S had also filed a Cross claim against Aerostar, claiming Aerostar was negligent and, therefore partially responsible for the accident by failing to fix the leaky water pipe. (Docket No. 37).

[3] Civil No. F DP2011-0388.

Triple S opposed Aerostar's motion (Docket No. 51), alleging first, that the spilled water was not caused by Triple S, but rather by Aerostar's negligence in failing to repair a faulty water pipe. Since Perfect Cleaning's contract is not for maintenance repairs, Triple S posits, then there is no duty to defend coverage under the policy. As a second reason in opposition to summary judgment, Triple S avers the policy in question only covered the owner of the facilities, the Ports Authority and not Aerostar, and even then, it was for damages to property and not third parties. Aerostar replied to Triple S's opposition. (Docket No. 54).

Triple S did not oppose the Ports Authority's dispositive motion, which contains the same legal arguments as Aerostar's motion, with a subtle, yet important difference: the Ports Authority additionally claims the resolution of the state court case of Guzmán Quintero, where Perfect Cleaning, Triple S and the Ports Authority were also defendants, mandates that the doctrine of *res judicata* be applied to the case before this Court.

Since both motions pertain to the same legal issue, which is Triple S's duty to defend both Aerostar and the Ports Authority under the agreement, the Court addresses the motions jointly.

For the reasons explained herein below, both Aerostar and the Ports Authority's Motions for Summary Judgment are GRANTED.

**STANDARD**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." Fed.R.Civ.P. 56 (c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." Cortés-Irizarry v. Corporación Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. Id. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id. At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

The First Circuit Court of Appeals has "emphasized the importance of local rules similar to Local Rule 56 [of the District of Puerto Rico]." Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007); *see also*, Colón v. Infotech Aerospace Servs., Inc., 869 F.Supp.2d 220, 225-226 (D.P.R. 2012). Rules such as Local Rule 56 "are designed to function as a means of 'focusing a district court's attention on what is -and what is not- genuinely controverted.'" Hernández, 869 F.Supp.2d at 7 (*quoting* Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir. 2006)). Local Rule 56 imposes guidelines for both the movant

and the party opposing summary judgment. A party moving for summary judgment must submit factual assertions in "a separate, short, and concise statement of material facts, set forth in numbered paragraphs." Loc. Rule 56(b). A party opposing a motion for summary judgment must "admit, deny, or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of facts." Loc. Rule 56 (c). If they so wish, they may submit a separate statement of facts which they believe are in controversy. Facts which are properly supported "shall be deemed admitted unless properly controverted." Loc. Rule 56(e); P.R. Am. Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 130 (1st Cir. 2010) and Colón, 869 F.Supp.2d at 226. Due to the importance of this function to the summary judgment process, "litigants ignore [those rules] at their peril." Hernández, 486 F.3d at 7.

**FINDINGS OF FACT**

At the outset, the Court must mention that Triple S's opposition to the dispositive motions was non-compliant with the Local Rules. Loc. R. Civ. P. 56 (c) specifically requires that the respondent either admit, deny, or qualify each of movant's proffered uncontested facts, and for each denied or qualified statement, the non-movant must cite the specific part of the record which supports the denial or qualification. If the non-moving party wishes, it can prepare a separate statement of issues of material fact which it deems are in controversy, and which preclude the entry of summary judgment. See Loc. R. Civ. P. 56 (c). Triple S failed to admit or deny any of co-Defendant Aerostar and/or the Ports Authority's proffered facts, thus rendering them automatically admitted for purposes of this motion.

Second, both Aerostar and the Ports Authority tendered almost identical issues of uncontested facts, with very little variation. Therefore, where two (2) versions of the same fact were offered by both parties, the Court only accepted one (1) submission.

With this in mind, and pursuant to the parties' submissions, the Court deems the following facts uncontested:

1. Perfect Cleaning is a corporation organized under the laws of the Commonwealth of Puerto Rico. See Docket No. 40 ¶ 2.

2. Perfect Cleaning had contractually agreed with the Ports Authority to provide cleaning services at the LMM Airport. Id.

3. On March 17, 2013, date of Richard Sterling's accident, Perfect Cleaning was providing cleaning services at the LMM Airport. Id.

4. Triple-S insured Perfect Cleaning at the time of the accident via a Commercial Insurance Policy, number CP081065053. Id., at ¶ 3.

5. Triple-S and Perfect Cleaning admit that Sterling suffered a fall at the LMM Airport on March 17, 2013. Id., at ¶¶ 4-5.

6. Perfect Cleaning admits it was providing cleaning services at the LMM Airport area where Sterling alleges to have suffered a slip and fall accident on March 17, 2013. Id., at ¶6.

7. Perfect Cleaning admits there was water on the floor and that it took all possible precautions to maintain the area as dry as possible. Id.

8. Perfect Cleaning and Triple S admit the subject services contract contained a Hold Harmless Agreement in favor of the owner, the Ports Authority. Id. at ¶ 11.

9. On March 11, 2013, Triple-S provided Perfect Cleaning a special endorsement to add to insurance policy CP081065053, whereby Aerostar was included as additional insured under the policy and was granted a hold harmless agreement in its favor under the same policy. See D. Exhibit 1.

10. Aerostar's hold harmless agreement states:

> The contractor, for itself, agents, employees, successor and assigns agrees to safe and hold harmless a [sic] the owner from and against any and all claims, demands and/or suits whether judicial or extra judicial for any cause whatsoever arising out or related to the execution of the contract described below, and its insurers shall defend the owner from such claims, demands and/or suits and shall bear all the expense for such defense contemplated within the coverage's and limits provided by this policy, except where such claims, demands and/or suits are due solely to the negligence of Aerostar Airport Holdings LLC. Docket No. 47-2.

## LEGAL ANALYSIS

### A. Preclusion.

While the Ports Authority argued that *res judicata*, or claim preclusion should be applied to this case, it is in fact its counterpart of collateral estoppel, or issue preclusion, that should apply. Collateral estoppel is a doctrine of judicial economy that grants preclusive effect to final adjudications of fact or law in subsequent litigation. See Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326, 99 S.Ct. 645 (1979). Its basic application is straightforward: when an issue of fact or law is actually litigated and determined by a valid

and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. Mihos v. Swift, 358 F.3d 91, 101 (1st Cir. 2004) (*quoting* Restatement (Second) of Judgments § 27 (1982)). Issue preclusion thus "bars the successive litigation of an *issue of fact or law* actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." New Hampshire v. Maine, 532 U.S. 742, 748–749, 121 S.Ct. 1808 (2001)(emphasis added).

In order to determine the preclusive effect to be given here to a judgment rendered by a state court, the Court must look to Puerto Rico law. See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 104 S.Ct. 892 (1984) (A federal court must provide a state court judgment the same preclusive effect as would be given to that judgment under the law of the state in which the judgment was rendered); see also Cruz v. Melecio, 204 F.3d 14 (1st Cir. 2000).

Under Puerto Rico law, issue preclusion is governed by P.R. Laws Ann. tit. 31, § 3343, which states:

> In order that the presumption of the res adjudicata may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such.

Although the statute only appears to specifically address *res judicata*, or claim preclusion, it has been interpreted to allow issue preclusion as well. Báez-Cruz, et al. v. Municipality of Comerío, et al., 140 F.3d 24 (1st Cir. 1998) (*citing* Texaco Puerto Rico, Inc. v. Medina, 834 F.2d 242, 245–46 (1st Cir. 1987)).

Regarding the requirements, "[t]he Supreme Court of Puerto Rico has held that when an issue 'essential to the prior judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive in subsequent litigation among the parties.'" Muñiz Cortés v. Intermedics, Inc., 229 F.3d 12, 14 (1st Cir. 2000) (*quoting* Félix Davis v. Vieques Air Link, 892 F.2d 1122, 1124-25 (1st Cir. 1990)). It has further held that in order to be given preclusive effect, a judgment must be "final and unappealable." Rivera v. Insurance Co. of Puerto Rico, 103 P.R. Dec. 91 (1974). Finally, the term "perfect" has not been read literally by state courts in Puerto Rico, holding instead that in order to establish the perfect identity of the parties, the movant must demonstrate that the parties in both the current and prior causes of action were the same or in privity with each other. See Boateng v. Interamerican Univ., 210 F.3d 56, 61-62 (1st Cir. 2000); Milán v. Centennial Communications Corp., 500 F.Supp.2d 6, 13 (D.P.R. 2007) (*citing* Partido Independentista Puertorriqueño v. Comision Estatal de Elecciones, 120 D.P.R. 580, 605, 20 P.R., Offic. Trans. 607, 632, 1988 WL 580845 (1988)).

    **1.    The Ports Authority's claims and the Guzmán Quintero case.**

The Guzmán Quintero case involved a now familiar sounding scenario: plaintiff therein slipped and fell in a wet puddle on the LMM Airport's premises. At that time, Aerostar had not yet been awarded the management contract for the LMM Airport, but like in the case currently before the Court, Perfect Cleaning had been awarded the cleaning contract, and also like in the present case, its policy was issued by Triple S.

Like in the instant case, the Ports Authority filed for summary judgment, alleging that under the terms of the professional services contract for cleaning of the LMM Airport,

Perfect Cleaning and Triple S had a duty to defend and indemnify it against the lawsuit. In particular, the Ports Authority averred that Triple S issued a "Certificate of Liability Insurance" whereby it placed the Ports Authority as an additional insured under Perfect Cleaning's policy, which was in full effect at the time of the a slip and fall. The document also contained a hold harmless agreement identical to the one in Uncontested Fact No. 10, except that Perfect Cleaning agreed to hold harmless and defend the Ports Authority and not Aerostar (because Aerostar had not yet begun its administration of the LLM Airport) and contained an exception to coverage where the accident was caused by the sole negligence of the Ports Authority. Triple S denied any duty to defend in that case, alleging there as it does here, that it was not responsible for the accident because the water on the floor came for a broken pipe in the ceiling, and it was not responsible for performing maintenance repairs to the premises.

The Puerto Rico Court of First Instance found otherwise. It held that Perfect Cleaning had specifically been delegated, by virtue of its contact with Ports Authority, the cleaning of the LMM Airport premises, and that included wiping up wet areas as those which had caused the accident. It further found that "upon the existence of liquid at the site of the accident, independently of where it came from, it was Perfect Cleaning's responsibility to wipe it dry and, if necessary, cordon off the area or with the corresponding danger signs so traffic could avoid it." (Docket No. 48-3, p. 7). It therefore held that Perfect Cleaning, and thus Triple S, were obligated to hold harmless and indemnify the Ports Authority from the complaint, and further, ordered that Perfect Cleaning and Triple S to reimburse the Ports Authority for the costs, expenses and attorneys fees that it had incurred

Richard and Shirley Sterling v. Aerostar Airport Holdings, LLC, et al
Civil No. 14-1180 (CVR)
Opinion and Order
Page 11

in from the time that the Ports Authority notified Triple S and Perfect Cleaning of the duty to defend them. Id. at p. 8.

It is evident, that the same matter, cause, and claims upon which the Defendants argued in the state court are, in fact, identical in all aspects to the case before this Court. At heart in the dispute in the state court was precisely the same clause as here, the hold harmless clause; raised between the same parties, the Ports Authority, Perfect Cleaning and Triple S; and the same issue, a slip and fall accident due to water on the floor that Perfect Cleaning was contractually obligated to clean up but alleged that it was not responsible for because it had no duty to repair the premises.

The exact issue of whether Triple S had a duty to defend an additional insured who also had a hold harmless clause under its policy was litigated and submitted to the state court via summary judgment, and the court tendered its decision in a written opinion. For preclusion purposes, rulings on dispositive motions are considered to meet the "actually litigated" condition. See Palmer v. Radisson Hotel Int'l., 45 F.Supp.2d 162 (D.P.R. 1999) (a ruling on a motion to dismiss, properly raised, defended and submitted for determination, is "actually litigated" for the purposes of issue preclusion)(*quoting* Restatement (Second) Judgments § 27, cmt. d. (1982).); and Keystone Shipping Co. v. New England Power Co., 109 F.3d 46,52 (1st Cir. 1997)(holding an issue was actually litigated for preclusion purposes when it was "subject to an adversary presentation and consequent judgment" that was not "a product of the parties' consent and is a final decision on the merits."). Finally, the ruling from the state court was issued on November 3, 2014 and is therefore final and unappealable.

There can be no doubt that issue preclusion applies to the precise legal issue raised in this case, and Triple S is estopped from raising the third party negligence defense here. Further, Triple S is bound by the state court holding in its contractual duty to defend the Ports Authority from the claims herein raised, irrespective of where the water came from.

Finally, the Court notes that the Ports Authority was also an additional insured in the policy,[4] which means for all purposes, that it is directly insured by the contract in question, thereby eliminating any further issue about the coverage question.

### 2. Aerostar and the Burgos López case.

Aerostar also signed an addendum to Perfect Cleaning's Triple S policy (which as previously stated, also applied to the Ports Authority) on March 11, 2013. It contained the same hold harmless and duty to defend clause discussed above, yet it excepted coverage when the claims, demand or suit was solely due to the Aerostar's negligence.[5] Like the Ports Authority, Aerostar was also named as an additional insured in Triple S's policy. This fact, coupled together with the Guzmán Quintero case ends this analysis, as there can be no doubt that Triple S also has a duty to defend Aerostar.

Aerostar, however, has raised an additional issue in its motion, to wit, that pursuant to the Puerto Rico Supreme Court' holding in Burgos López, Triple S had a duty to defend it that commenced as soon as the present case was filed.

---

[4] See Docket No. 48-2, p. 4, Par. D.

[5] Which the court finds in inapplicable at this stage, as the Complaint contains negligence claims against Perfect Cleaning. See Docket No. 1, ¶¶ 35-41. Furthermore, Perfect Cleaning admitted in its answer to Aerostar's Cross Claim that they were in the area where Plaintiff Sterling suffered his accident attempting to dry the wet floor. See Docket No. 40, ¶ 6.

The issue presented in Burgos López dealt with when the duty to defend arose: whether it was at the time the complaint was filed, or whether it arose after negligence was established against the covered party, in that case, Posadas, the owner of the hotel. Posadas, too, was covered by a hold harmless and duty to defend agreement tendered by Ray Engineers, a third party defendant. The Supreme Court then performed an extensive analysis of hold harmless clauses and concluded that the duty to defend was activated when the claim was filed, as opposed to being contingent on the outcome of the claim, because that would make it a reimbursement claim, and not a duty to defend claim. The Supreme Court, like in Quintero, then ordered Ray Engineers to pay Posadas the full amount Posadas had expended in attorneys fees for its defense of the claims up to the date of the judgment.

The Court cannot agree with Triple S in that the clauses at issue apply only to loss or damage to the facilities. Unfortunately, the hold harmless agreement is broad and applies to "any and all claims, demands, and/or suits", "for any cause whatsoever arising out of or related to the execution of this contract." See Docket No. 47-2. It is clear that this broad language applies to this case, and that the claim arose from a duty that Perfect Cleaning had to perform under the contract. Furthermore, both state court cases present clear sets of facts that mitigate against Triple S.

It is black letter law that a court sitting in diversity such as this one must look to the substantive state law for controlling precedent. See Rojas–Ithier v. Sociedad Española de Auxilio Mutuo y Beneficiencia de P.R., 394 F.3d 40 (1st Cir. 2005) and Marcano Rivera v. Turado Med. Ctr., 415 F.3d 162 (1st Cir. 2005). Pursuant the aforementioned analysis and

the Puerto Rico Supreme Court's holding in <u>Burgos López</u> then, the Court today finds as follows:

    a.    Triple S, as insurer to Perfect Cleaning, has a duty to defend both Aerostar and the Ports Authority in this case;

    b.    The duty of Triple S to defend both parties arose when the complaint in the instant case was filed.

Aerostar additionally asks the Court to dismiss the Cross claim filed by Perfect Cleaning (Docket No. 41) and to find that to the extent that Plaintiffs are able to prove the allegations in their complaint, that Perfect Cleaning and Triple S shall be directly liable to Plaintiffs. Notwithstanding the exclusion for sole negligence contained in the hold harmless clause, because Triple S's insurance contact includes as additional insureds both the Ports Authority and Aerostar, in the end, no matter what percentage comparative negligence the jury might assign each of them, they are insured under the policy and Triple S must respond for both, as well as for Perfect Cleaning. Only if the jury finds for Defendants and against Plaintiffs may Triple S be liberated from paying, but it still has a duty to defend Aerostar and Ports Authority under both the hold harmless agreement and as additional insureds.

Thus, Perfect Cleaning's Cross claim is hereby DISMISSED WITH PREJUDICE, and the Court holds that Triple S is directly liable to Plaintiffs should the jury, in its day, find for them.

Therefore, the Motions for Partial for Summary Judgment filed by Aerostar and the Ports Authority's on the limited claim regarding coverage are GRANTED. (Docket Nos. 47 and 48).

## CONCLUSION

For the aforementioned reasons, co-Defendant's Aerostar and the Ports Authority's Motions for Partial for Summary Judgment (Docket Nos. 47 and 48) on the limited issue of the duty to defend are GRANTED. In addition, Perfect Cleaning's Cross Claim is hereby DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 31st day of July, 2015.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE